IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–01591–KMT

KEVIN TOMMIE HALL,

    Plaintiff,

v.

C. LINDREN, RN,
B. MORAN, RN, and
S. CONROY, MD.,

    Defendants.

## ORDER

    This matter is before the court on Defendants' "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 31 [Mot.], filed December 5, 2019), to which Plaintiff responded (Doc. No. 32 [Resp.], filed January 14, 2020) and Defendants replied (Doc. No. 33 [Reply], filed January 28, 2020).

    Also before the court is Plaintiff's "Motion for Appointed Counsel and Permission to Add the United States and the Named Defendants in Official Capacity," which Plaintiff filed as a part of his response to the Motion to Dismiss. (Resp. at 14–15.) Defendants responded to this motion in their reply. (Reply at 13–15.)

## STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed his Amended Complaint on June 10, 2019.  (Doc. No. 6 [Compl.].)  Plaintiff claims that three Federal Bureau of Prisons ("BOP") medical providers were deliberately indifferent to his medical needs while he was incarcerated at the United States Penitentiary in Florence, Colorado.  (*See id.*)

Plaintiff states he woke on June 8, 2017 at 9:00 a.m. with a sharp pain in his stomach area.  (*Id.* at 2.)  Because of his prior medical history (*see id.* at 1–2), Plaintiff states he "recognize[d] the returned symptoms of another gastrointestinal hemorrhage."  (*Id.* at 2.)  At approximately 10:00 a.m., Plaintiff's cell partner notified the unit officer that Plaintiff needed medical attention.  (*Id.*)  About fifteen minutes later, Defendant Lindgren arrived at Plaintiff's cell, and "[he] told her in no uncertain terms that [he] was suffering pain and that [he] was having a gastrointestinal hemorrhage."  (*Id.*)  Plaintiff alleges Defendant Lindgren looked at Plaintiff's medical file, took Plaintiff's pulse, told Plaintiff's cell partner to "watch him at let us know if he gets worse," and then left Plaintiff's cell.  (*Id.*)

Plaintiff states he later fainted while attempting to get to the toilet.  (*Id.* at 3.)  He alleges he awoke to Defendant Lindgren standing over him and telling him to get up.  (*Id.*)  When Plaintiff returned to his bed, Defendant Lindgren allegedly told Plaintiff's cell partner again to watch Plaintiff.  (*Id.*)

Plaintiff states at some point later, Officer Gusto came on duty, and other inmates told him about Plaintiff.  (*Id.*)  Plaintiff states Officer Gusto found Plaintiff alone on the floor, apparently after fainting.  (*Id.* at 3–4.)  Defendant Moran and another nurse arrived at his cell,

and Officer Gusto advised them that Plaintiff had blood in his stool. (*Id.* at 3.) Plaintiff alleges Defendant Moran took his blood pressure and told Plaintiff's cell partner to watch Plaintiff. (*Id.*)

At some point, Plaintiff states the pain became more intense, and Defendant Moran witnessed Plaintiff writhing on his bed. (*Id.*) Plaintiff states he was very afraid he was going to die and begged Defendant Moran to do something. (*Id.* at 4.) Plaintiff states that eventually Officer Gusto took the initiative to contact the lieutenant to get Plaintiff sent to the hospital. (*Id.*) At 6:00 p.m., Officer Duck arrived at Plaintiff's cell and took him by wheelchair to Medical, where Nurse Serby looked at a stool sample Plaintiff took with him and noted that "a little blood can make it look like a a lot [sic]." (*Id.*) Plaintiff had another bowel movement, which Officer Duck witnessed and then told Plaintiff, "You are bleeding out." (*Id.*) Plaintiff states Officer Duck went to tell Nurse Serby his observations, and when Officer Duck returned he told Plaintiff he was taking Plaintiff to the hospital. (*Id.*)

Plaintiff arrived at St. Thomas Moore Hospital at 8:10 p.m., where Plaintiff says he was found to be suffering an acute gastrointestinal hemorrhage with fresh voluminous blood in emesis. (*Id.*) At some unspecified date, Plaintiff had surgery, and he was given strong pain medications. (*Id.* at 5.) When Plaintiff asked about the severity of his pain, the doctor informed Plaintiff that he had sustained rib fractures from fainting multiple time in his cell while attempting to use the toilet. (*Id.*)

Plaintiff seeks monetary damages from the defendants in their individual capacities. (*Id.* at 8; *see also* Resp. at 14 [request to add claims against the defendants in their official capacities].) Defendants move to dismiss Plaintiff's claims in their entirety. (*See* Mot.)

## STANDARDS OF REVIEW

### A.   Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.   *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.' " *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.     *Motion to Dismiss*

Defendants argue they are entitled to qualified immunity on Plaintiff's claims against them.  The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted).  Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part.  *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).  Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

### 1.     *Eighth Amendment Deliberate Indifferent Claim*

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id.* at 837. "A medical need is [sufficiently] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotations omitted).

#### a.     *Objective Component*

As to the objective component, the court considers whether Plaintiff has been deprived of a sufficiently serious basic human need. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Oxendine*

*v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks omitted). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). The "substantial harm" can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. *Id.* Although "not every twinge of pain suffered as a result of delay in medical care is actionable," when the pain experienced during the delay is substantial, the prisoner "sufficiently establishes the objective element of the deliberate indifference test." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).

Defendants argue that Plaintiff has failed to allege that the delay in his care resulted in substantial harm. (Mot. at 13–14.) To the extent Plaintiff contends that a delay in his being transported to the hospital caused substantial harm to his existing gastrointestinal hemorrhage, the medical records attached to his complaint belie this allegation.[1] Rather, the medical records show that Plaintiff was admitted to the emergency room and was "hemodynamically stable throughout his stay," with the CT scan showing no acute findings. (Doc. No. 42 at 1.) Plaintiff

---

[1] The court may consider any attached or referenced documents when considering a Motion to Dismiss. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Plaintiff attached his medical records as exhibits to his original complaint (Doc. No. 1) and refers to the same exhibits throughout his Amended Complaint.

8

was admitted for further evaluation and likely colonoscopy to be performed the next morning. (*Id.*)  Plaintiff has failed to show that Defendants' decision to monitor him for a few hours before he was transported to the hospital resulted in any substantial harm to his gastrointestinal hemorrhage.

Moreover, to the extent Plaintiff alleges he was denied pain relief, Defendant Lindgren promptly responded to Plaintiff's complaint of pain, conducting a physical examination that provided no objective verification of the type of pain of which Plaintiff was complaining.  (Doc. No. 1 at 20.)  *See Tennyson v. Raemisch,* 638 F. App'x 685, 690 (10th Cir. 2015) (explaining the "relevant question" is "whether [the medical provider] was aware that th[e] denial [of medication] would cause the kind of pain that would be deemed objectively serious for Eighth Amendment purposes," and holding no constitutional violation where prisoner did not disclose the particular severity of alleged pain to the medical provider at the time).  Under these circumstances, Plaintiff has failed to allege that he sustained any pain of a constitutionally significant magnitude.  Plaintiff's allegations and the medical records demonstrate that Defendants did not ignore Plaintiff's complaints of pain; the alleged pain simply was unconfirmed upon a physical examination, and the determination was made to monitor the situation and take medical action as appropriate.  These allegations do not plausibly establish the existence of substantial harm based on pain.

Finally, however, Plaintiff asserts that he fractured his ribs when he "fainted multiple times in [his] attempting to use the toilet" (Compl. at 5.), and that Defendant Lindgren's failure to monitor him caused his fainting and subsequent rib fractures (*id.* at 6).  Defendants argue Plaintiff did not bring the falls to the attention of any Defendant.  However, Defendant Lindgren

9

noted that she responded to a second call from the unit officer and found Plaintiff lying on the floor and that he reported he got dizzy.  (Doc. No. 1 at 20.)  The court finds that Plaintiff has sufficiently alleged that "more timely receipt of [a transfer to the hospital] would have minimized or prevented" Plaintiff's fractured ribs.  *Mata*, 427 F.3d 745, 753 (10th Cir. 2005).

### b.      *Subjective Component*

The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  *Farmer*, 511 U.S. at 838.  A defendant knows of and disregards an excessive risk to a prisoner's health or safety when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he actually drew that inference.  *Farmer*, 511 U.S. at 837.  "The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal citations and quotations omitted).

Importantly, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a complaint that a [medical care provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle*, 429 U.S. at 106.  Further, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106; *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").  Finally, a prisoner does

not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired.  *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle,* 429 U.S. at 107).

### i. *Defendant Lindgren*

Plaintiff complains that Defendant Lindgren ignored his pleas to be sent to the hospital for a gastrointestinal bleed and assigned an untrained inmate to watch over him.  (Compl. at 6.) According to the medical records attached to the complaint, Defendant Lindgren quickly responded to two requests to evaluate Plaintiff.  (Doc. No. 1 at 20021.)  Upon being called by the unit officer the first time, Defendant Lindgren examined Plaintiff and noted that (1) Plaintiff was able to walk from his cell to the medical room in his housing unit; (2) he was not vomiting; (3) he showed her "some dark, soft stool"; (4) he complained of pain that Defendant Lindgren attempted to objectively confirm, but could not, noting that, "upon palpation," Plaintiff "exhibited no physical reaction."  (*Id.* at 20.)  Upon being called back to Plaintiff's cell, and before finishing her note from the first visit, Defendant Lindgren noted that (1) Plaintiff was lying on the floor and reported he got dizzy, but he was able to get up without problems; (2) he reported no injuries; and (3) he stated that old bruising on his arms was caused by playing baseball; and (4) his skin appearance and color were normal.  (*Id.*)  Defendant Lindgren

contacted the on-call provider, Dr. Conroy, and decided to monitor Plaintiff for any changes for another two to four hours.  (*Id.* at 20–21.)

Plaintiff believes Defendant Lindgren should have directed that he be transported "to the hospital for emergency care" (Compl. at 6–7); however, Plaintiff does not have a valid claim of deliberate indifference simply because he was denied that hospital transport at that time. *Callahan*, 471 F.3d 1160.  The medical records belie Plaintiff's allegations that she neglected her duties to treat him or that she actually drew the inference that Plaintiff faced a substantial risk of serious harm by choosing to monitor his condition for a few hours.  *See Farmer*, 511 U.S. at 828. Moreover, the allegations do not support an inference of culpable mental intent—particularly because she was not able to elicit a physical reaction upon a physical examination.  (Doc. No. 1 at 20.)  *See Tennyson*, 638 F. App'x at 690.  Finally, to the extent Plaintiff alleges Defendant Lindgren believed he was faking his symptoms (Compl. at 3), Defendant Lindgren's notes in the medical records contradict this allegation.  (*See* Doc. No. 1 at 19–20.)

### ii.     *Defendant Conroy*

Defendant Conroy did not personally examine Plaintiff and relied on information provided to her by Defendant Lindgren.  Plaintiff's allegations and the medical records attached to his complaint show that, based on that information, Defendant Conroy did not consciously disregard a substantial risk of serious harm in deciding that continued monitoring of Plaintiff's condition was the appropriate course.  *Self*, 439 F.3d at 1231.

### iii.     *Defendant Moran*

Plaintiff makes clear that his deliberate indifference claim against Defendant Moran rests on the same allegations as his claim against Defendant Lindgren and "was faced with the same

set of facts as Defendant Lindgren (symptoms and access to my medical file)." (Compl. at 7.) Plaintiff does not allege that his physical presentation differed in any significant way from when Defendant Lindgren evaluated him about two hours earlier. Therefore, for the same reasons that Plaintiff has failed to plead the subjective element of his claim against Defendant Lindgren, Plaintiff has not alleged that Defendant Moran consciously disregarded a substantial risk of serious harm.

Plaintiff's apparently believes that a medical note plainly written by Defendant Moran on June 11, 2017, was actually written on June 8, 2017. (*See* Doc. No. 1 at 22.) Even if Plaintiff is correct, the note confirms Defendant Moran was not deliberately indifferent to a serious medical need. Rather, Defendant Moran notes Plaintiff complained of severe abdominal pain, appeared distressed, and was "writhing on bed in cell." (*Id.*) Defendant Moran notes she attempted to contact the on-call provider and made arrangement for Plaintiff's transfer to the hospital. (*Id.*)

The court finds Plaintiff has not set forth sufficient factual allegations to support the subjective component of his claim. As such, Plaintiff has failed to state an Eighth Amendment violation, and Defendants are entitled to qualified immunity on the claims for money damages asserted against them in their individual capacities.

### B.     *Plaintiff's Motion*

Plaintiff's "Motion for Appointed Counsel and Permission to Add the United States and the Named Defendants in Official Capacity" is subject to denial because a response to a motion to dismiss is not the proper place to raise them. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate

motion."). Moreover, the court has already denied a motion by Plaintiff to amend his complaint to sue the defendants in their official capacities. (Doc. No. 47 at 5.)

The assessment of whether to appoint counsel rests in the sound discretion of the court. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). Because the court has determined that Plaintiff has failed to state an Eighth Amendment claim, Plaintiff's motion for the appointment of counsel is denied.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that Defendants' "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 31) is **GRANTED**. Plaintiff's claims are dismissed with prejudice for failure to state a claim upon which relief can be granted. It is further

**ORDERED** that Plaintiff's "Motion for Appointed Counsel and Permission to Add the United States and the Named Defendants in Official Capacity" is **DENIED**. It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 30th day of September, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge